## Richmond

WILLIAM MOSES MARTIN v. COMMONWEALTH OF VIRGINIA.

May 3, 1954.

Record No. 4223.

Present, Hudgins, C.J., and Eggleston, Spratley, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Carter & Bendall*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *C. F Hicks, Assistant Attorney General*, for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

William Moses Martin was indicted by a grand jury, duly impanelled in the Corporation Court of Danville, upon two counts under sec. 18-97, Code of Virginia, 1950, commonly known as the pandering statute. The first count charged him with the crime of pandering. The second count charged that he: "feloniously did place in his dwelling house, a certain female, to-wit, Helen Watlington for the purpose of causing her to cohabit with male persons, and did attempt to receive money or other things of value therefor"; that is, charged him with an attempt to commit the crime of pandering.

Upon his trial, the jury returned the following verdict:

"We, the Jury, find the defendant guilty as charged in Count two (2) of the within indictment of attempting to receive money or other things of value for causing the said Helen Watlington to cohabit with male persons, and fix his punishment at one (1) year in the penitentiary."

The trial court overruled a motion to set aside the verdict of the jury as being contrary to the law and the evidence, and without evidence to support it, and sentenced the defendant to imprisonment in the penitentiary in accordance with the verdict.

 The first error assigned is that the language of the second count of the indictment is not sufficient to charge a crime. This is based on the contention that the words, "to cohabit with male persons" do not imply either sexual intercourse or connote illicit sexual relations.

In the first place, no objection was made to the validity of the indictment in the trial court. Moreover, the second count was sufficient as it stood. It clearly and specifically

charged the defendant, in the language of the statute, with an attempt to violate the following provision of § 18-97:

"Any person who shall receive any money or other valuable thing for or on account of procuring for or placing in a house of prostitution or elsewhere any female for the purpose of causing her to cohabit with any male person shall be guilty of a felony, and upon conviction thereof shall be confined in the penitentiary for not less than one year nor more than ten years."

The indictment is drawn in the precise words of the statute. The clause "to cohabit with male persons" must be construed in the light of the context in which it is found, that is, in connection with the language accompanying it, the surroundings associated with it, and the purpose in respect of which it is used. *Burchfield* v. *Burchfield*, 5 Wash. (2d) 359, 105 P. (2d) 286; *Pearsons* v. *Pearsons*, 282 Ill. App. 92, 97. The whole tenor of § 18-97 is to prohibit illicit and commercial prostitution and procurement. We have no difficulty in concluding that the legislature clearly intended the word "cohabit," as therein used, to definitely mean the having of illegal sexual intercourse.

In construing the word "cohabit" as used in a divorce statute, we said in *Tarr* v. *Tarr*, 184 Va. 443, 448, 35 S. E. (2d) 401, 403:

"The literal or derivative meaning of the word 'cohabit' is to live together while its popular and often legal signification is to copulate. The latter interpretation was, in our opinion, intended by the Legislature."

See *DeBerry* v. *DeBerry*, 115 W. Va. 604, 177 S. E. 440; *Bracksmayer* v. *Bracksmayer*, 22 N. Y. S. (2d) 110, 112.

The challenged count charges that the defendant did everything set out in the quoted portion of § 18-97, except receive the money, and it further charges that he attempted to do that. The intent to commit the offense of pandering is included in the phrase "for the purpose of causing her to cohabit with male persons." It is a part of the acts alleged. *Broaddus* v. *Commonwealth*, 126 Va. 733, 101 S. E. 321.

The second count sufficiently informed the defendant of the cause and nature of the charge against him. *Saunders* v. *Commonwealth*, 186 Va. 1000, 1005, 45 S. E. (2d) 307.

 The final assignment of error is that the verdict of the jury is contrary to the law and the evidence, and without evidence to support it.

The evidence certified to us in narrative form, by stipulation of counsel, is as follows:

On the afternoon of November 21, 1952, the defendant, an elderly colored man, took Helen Watlington, a young colored woman, to a room occupied by him in the City of Danville, Virginia. On the following day, the defendant solicited three young colored men to have sexual intercourse with Helen Watlington, upon the payment of money to him, the defendant. These three men testified that Martin took them to his room, and showed them Helen Watlington lying in bed nude. One of the colored men solicited said that he went to get the necessary money; but when he returned, the defendant and Helen Watlington had been arrested.

Introduced as an exhibit was a written statement prepared by the police at the time of Martin's arrest, and signed by Helen Watlington, wherein she stated that she had had intercourse with other men while at Martin's room, and that Martin had told her he received money from those men for the use of her body. However, when she was examined as to the particulars of the written statement, she denied "having had intercourse with any one other than Martin, or that Martin had received money from anyone for the use of her body."

It is well settled in this jurisdiction that in criminal law an attempt is an unfinished crime, and is compounded of two elements, the intent to commit the crime and the doing of some direct act towards its consummation, but falling short of the execution of the ultimate design; that it need not be the last proximate act towards the consummation of the crime in contemplation, but is sufficient if it be an act apparently adopted to produce the result intended; mere

preparation is not sufficient. *Uhl, et als.* v. *Commonwealth,* (1849) 6 Gratt. (47 Va.) 706; *Hicks* v. *Commonwealth,* 86 Va. 223, 226, 9 S. E. 1024; *Glover* v. *Commonwealth,* 86 Va. 382, 386, 10 S. E. 420; *Collins* v. *Radford,* 134 Va. 518, 535, 113 S. E. 735; *Thacker* v. *Commonwealth,* 134 Va. 767, 769, 114 S. E. 504; *Dixon* v. *Commonwealth,* 162 Va. 798, 803, 173 S. E. 521; *Merritt* v. *Commonwealth,* 164 Va. 653, 657, 180 S. E. 395; *Granberry* v. *Commonwealth,* 184 Va. 674, 678, 36 S. E. (2d) 547; *Preddy* v. *Commonwealth,* 184 Va. 765, 775, 36 S. E. (2d) 549; *Anderson* v. *Commonwealth,* 195 Va. 258, 261, 77 S. E. (2d) 846.

Section 18-8 of the Code of Virginia provides, in part, as follows:

"Every person who attempts to commit an offense, and in such attempt does any act towards its commission, shall, when not otherwise provided, be punished as follows:

 \* \* \* \* \* \* \*

"(2) If the offense attempted be a non-capital felony, he shall be confined in the penitentiary not less than one nor more than five years, or in the discretion of the jury or the judge trying the case be confined in jail not to exceed twelve months. \* \* \*"

The defendant contends that the acts charged amounted to nothing more than a mere preparation to commit a crime, and that the allegations do not show any overt act towards its accomplishment. He insists that since there is no substantive evidence that Helen Watlington would have submitted to intercourse with any of the men that the crime could not have been committed in the absence of her consent.

"In a general way, however, it may be said that preparation consists in devising or arranging the means or measures necessary for the commission of the offense and that the attempt is a direct movement towards the commission after the preparations are made." 14 Am. Jur., Criminal Law, § 67, page 816.

See also 14 Am. Jur., Criminal Law, section 65, and 22 C. J. S., Criminal Law, sections 73 and 75.

The words "to attempt" in common and ordinary usage mean "to try, to endeavor to do or perform, to venture upon." They denote a physical act, such as "effort or endeavor." 4 Words and Phrases, Perm. Ed., 740.

The undisputed evidence shows that the defendant did everything but receive money in the pursuance of his plans. He placed the female in his room, exhibited her lying in bed nude to three male persons, and solicited money from those persons for the purpose of causing her to have sexual intercourse with them. One of the males went to get the money to be paid to Martin, but the intervention of the police prevented payment and the final consummation of the intended crime. This was not due to any fault or change of plans on Martin's part. He performed direct ineffectual acts towards the commission of the offense of pandering, and when he did this, the attempt to commit the offense was complete. Code, § 18-8. Neither the ineffectuality of his acts nor the prevention of performance by police was of a kind to rid his acts of their criminal character. *Collins* v. *Radford, supra*.

In *Lee* v. *Commonwealth*, 144 Va. 594, 600, 131 S. E. 212, we quoted with approval the following statement from *Stokes* v. *State*, 92 Miss. 415, 46 So. 627, 21 L. R. A. (N. S.) 898:

"Whenever the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt, and this court will not destroy the practical and common sense administration of the law with subtleties as to what constitutes preparation, and what an act done toward the commission of a crime. Too many subtle distinctions have been drawn along these lines for practical purposes. Too many loopholes have been made whereby parties are enabled to escape punishment for that which is known to be criminal in its worst sense."

 Under the provisions of statutes involved here, there

is no requirement that the female concerned must be either a prostitute or willing to engage in illicit sexual relations. The statute covers a situation where the woman is immoral, as well as where she is an innocent virgin. It is immaterial whether Helen Watlington knew of the defendant's purpose when he placed her in his room. Her acts and admissions do not indicate that she was either innocent or virtuous. She is not here being tried. Her willingness or unwillingness to indulge in sexual intercourse has no bearing on Martin's attempt to receive money for his "purpose of causing her to cohabit with male persons" and to receive money therefor. The employment of her as a nude exhibit was manifestly one of a series of acts apparently adopted to produce the result intended.

The case of *Hicks* v. *Commonwealth*, 86 Va. 223, 9 S. E. 1024, 19 Am. St. Rep. 891, relied on by the defendant contains nothing which conflicts with the view that the defendant here was guilty of the attempt charged. There the intention to commit the crime was clearly shown; but the conduct of the accused got no further than the preparation and solicitation of a third party, who failed to take any steps towards carrying out the criminal design. In the instant case, the defendant not only made preparations by placing the female in his dwelling room, and exhibiting her in a nude condition, without objection from her, so far as the record shows, but actually undertook to collect money for the purpose of causing the female to cohabit with male persons. Had he received the money, the crime of pandering would have been consummated, and this was prevented only by the intervention of the police. Material here is the expressed purpose of Martin, the means adopted to carry out his purpose, and his overt actions with respect thereto.

In his argument at the bar of this court, counsel for the defendant contends for the first time that the latter portion of the verdict is not responsive to the allegations of the second count of the indictment, in that it fails to set out all the elements of the crime of pandering. The verdict would

have been sufficient if it had merely read, "We, the jury, find the defendant guilty as charged in the second count of the indictment." If the defendant had directed the attention of the court to the point now made, the verdict could have been amended by the jury at any time before their discharge, by striking out all subsequent language.

A verdict in a criminal case is always to be read in connection with the indictment and if, upon such reading, its meaning is certain that is sufficient. *Henderson* v. *Commonwealth*, 98 Va. 794, 34 S. E. 881. Strict technical form is not required in a verdict. *Mawyer* v. *Commonwealth*, 140 Va. 566, 570, 125 S. E. 317.

Here, there is no possible doubt of the meaning of the verdict. Read in connection with the allegations of the second count of the indictment, what the jury intended to find is certain. The verdict was responsive to the charge in that count, and to the penalty provided by statute for the specific crime therein charged. It fully informed the defendant of the offense for which he had been convicted, and his rights have not been prejudiced. Criminal trials are not to be upset upon technicalities that are of no consequence. Section 19-139, Code of Virginia, 1950.

On the whole case, we conclude that the defendant has had a fair trial, and that no reversible error has been shown.

*Affirmed.*